# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PEGASYSTEMS INC.,

     *Plaintiff/Counterclaim-Defendant*,

     v.

APPIAN CORPORATION,

     *Defendant/Counterclaim-Plaintiff*.

Case No. 23-cv-11776-LTS

ORAL ARGUMENT REQUESTED

## PLAINTIFF/COUNTERCLAIM-DEFENDANT PEGASYSTEMS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>PARTIAL MOTION TO DISMISS THE COUNTERCLAIMS</u>

# <u>TABLE OF CONTENTS</u>

Page

I.      RELEVANT BACKGROUND ...................  ....................................................2

    A.      The Statements at Issue.................................................................................3

    B.      A Unanimous Panel of the Court of Appeals of Virginia Reverses the $2
          Billion Verdict ...........................................................................................6

II.     LEGAL STANDARD.....................................................................................6

III.    ARGUMENT ................................................................................................7

    A.      Appian Cannot State a Claim for Trade Libel ..........................................7

    B.      Appian Fails to State a False Advertising Claim Under the Lanham Act ............12

    C.      Appian Fails to State a Claim Under M.G.L c. 93A..............................15

    D.      Appian's Redundant Declaratory Judgment Claim Should Be Stricken ...............19

IV.     CONCLUSION...........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Town of Brookline Massachusetts*,
  308 F. Supp. 3d 509 (D. Mass. 2018) ....................................................................2

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
  8 F.4th 1 (1st Cir. 2021)...............................................................................16, 17

*Aquino v. Pacesetter Adjustment Co.*,
  416 F. Supp. 2d 181 (D. Mass. 2005) ..................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................7

*Bell Atl. Co. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................7

*Blatty v. New York Times Co.*,
  42 Cal. 3d 1033, 728 P.2d 1177 (1986) ...............................................................8

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
  284 F.3d 302 (1st Cir. 2022)..........................................................................10, 12

*City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*,
  683 F. Supp. 3d 120 (D. Mass. 2023) ...................................................................3

*Conformis, Inc. v. Aetna, Inc.*,
  58 F.4th 517 (1st Cir. 2023).................................................................................11

*Dobelle v. Flynn*,
  12 F. Supp. 3d 274 (D. Mass. 2014) ...................................................................17

*EMD Millipore Corp. v. HDI-Gerling Am. Ins. Co.*,
  511 F. Supp. 3d 41 (D. Mass. 2021) ...............................................................8, 10

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*
  314 F.3d 48 (2d. Cir. 2022)..................................................................................14

*In re Feeley*,
  393 B.R. 43 (Bankr. D. Mass. 2008) ...................................................................19

*Guity v. Com. Ins. Co.*,
  631 N.E.2d 75 (Mass. App. Ct. 1994) .................................................................16

*Hi-Tech Pharms., Inc. v. Cohen*,
   277 F. Supp. 3d 236 (D. Mass. 2016) ............................................................................7, 9, 11

*HipSaver, Inc. v. Kiel*,
   464 Mass. 517, 984 N.E.2d 755 (Mass. 2013) ..............................................................8, 9, 10

*Jones v. Montachusetts Reg'l Transit Auth.*,
   No. 22-1569, 2023 WL 9233970 (1st Cir. Nov. 30, 2023) ......................................................2

*Kuwaiti Danish Comp. Co. v. Digital Equip. Corp.*,
   438 Mass. 459 (2003) ......................................................................................................18, 19

*Lexington Luminance LLC v. Osram Sylvania Inc.*,
   972 F. Supp. 2d 88 (D. Mass. 2013) .......................................................................................6

*Morrison v. Toys "R" Us, Inc.*,
   806 N.E.2d 388 (Mass. App. Ct. 2004) .................................................................................16

*Ocasio-Herndandez v. Fortuna-Burset*,
   640 F.3d 1 (1st Cir. 2011) ........................................................................................................7

*PBM Prod., LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) .................................................................................................16

*Pegasystems Inc. v. Appian Corp.*,
   No. 1399-22-4, 2024 WL 3571808 (Va. Ct. App. July 30, 2024) ................................. *passim*

*Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*,
   332 F.3d 6 (1st Cir. 2003) .....................................................................................................14

*Rental Prop. Mgmt. Servs. v. Hatcher*,
   97 N.E. 3d 319 (Mass. 2018) ................................................................................................16

*Scholz v. Delp*,
   473 Mass. 242 (Mass. 2015) .................................................................................................11

*Skehel v. DePaulis*,
   No. 13-cv-11202-ADB, 2017 WL 2380164 (D. Mass. June 1, 2017) ....................................18

*Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs., Inc.*,
   712 N.E.2d 607 (Mass. App. Ct. 1999) ................................................................................18

*Transpac Marine, LLC v. Yachtinsure Servs., Inc.*,
   655 F. Supp. 3d 18 (D. Mass. 2023) .....................................................................................20

*Ultra-Temp Corp. v. Advanced Vacuum Systems, Inc.*,
   27 F. Supp. 2d 86 (D. Mass. 1998) .................................................................................13, 14

*Valley Children's Hosp. v. Athenahealth, Inc.*,
No. 22-CV-10689-DJC, 2023 WL 6065800 (D. Mass. Sept. 18, 2023)................................17

*Welch Foods, Inc. v. Nat'l Union Fire Ins. Co.*,
Civil Action No. 09-12087-RWZ, 2010 WL 3928704, at *3 (D. Mass. Oct. 1,
2010), *aff'd sub nom.*, *Welch Food, Inc. v. Nat'l Union Fire Ins. Co. of
Pittsburgh*, 659 F.3d 191 (1st Cir. 2011) ............................................................................8, 9

*Williams-Sonoma, Inc. v. Wayfair Inc.*,
652 F. Supp. 3d 216 (D. Mass. 2023) ............................................................................12, 13

*Zurich Am. Ins. Co. v. Watts Regul. Co.*,
796 F. Supp. 2d 240 (D. Mass. 2011) ............................................................................19, 20

## Statutes

15 U.S.C. § 1125(a)(1)(B) ........................................................................................................12, 13

28 U.S.C. § 2201 ..............................................................................................................................20

M.G.L. c. 93A .........................................................................................................1, 2, 7, 15, 18

## Other Authorities

Fed. R. Civ. P. 12(b)(6) .............................................................................................................2, 6, 7

Fed. R. Civ. P. 12(c) ........................................................................................................................2

Fed. R. Civ. P. 12(f) .............................................................................................................2, 19, 20

Appian's "Counterclaims and Answer" (ECF No. 44) seek to retaliate against Pega for holding Appian accountable for its smear campaign. Pega sued Appian in August 2023 for the false and defamatory statements it made relating to its now-vacated $2 billion trade secrets verdict. Appian countersued in February 2024, alleging that Pega's truthful statements about its own conduct and its belief that the Virginia verdict was fatally flawed—legal positions Pega had steadfastly (and now successfully) advanced throughout the appeal—were somehow allegedly false and defamatory as against Appian. Appian's legal theory makes no sense, and it is clear that Appian's Counterclaims are borne of animus and designed to shift focus and accountability away from its own falsehoods so that it may continue to spread misinformation to harm Pega.

On July 30, 2024, the $2 billion trade secret verdict was reversed by a unanimous panel of the Court of Appeals of Virginia. The appellate court found for Pega on each and every one of the evidentiary and jury instruction grounds that Pega had raised and threw out both the finding of liability and the damages award in their entireties. This reversal has made it even more apparent that Appian's defamatory statements were baseless and actionable. It also underscores the overreach of Appian's Counterclaims. Notably, it was Appian's same overreach in the Virginia Litigation that resulted in the fatally flawed verdict—which the Court of Appeals has now corrected. *See Pegasystems Inc. v. Appian Corp.*, No. 1399-22-4, 2024 WL 3571808 (Va. Ct. App. July 30, 2024) (hereinafter "VA Op." or "Virginia Opinion").

Appian asserts four causes of action: (1) defamation; (2) trade libel; (3) false advertising under the Lanham Act; and (4) unfair competition under M.G.L. c. 93A. Appian also alleges one count seeking declaratory judgment, essentially asking for a declaratory judgment that Appian prevails on Pega's claims. Appian alleges that Pega made ten objectionable statements ("Statements"), but its pleading failed to clearly specify which Statement supports which causes

of action. In its response to Pega's motion for a more definite statement (ECF No. 67), Appian contended that only one Statement supports its defamation claim,[1] but all ten Statements supposedly form the basis of its trade libel, Lanham Act, and Mass. Gen. Laws c. 93A ("c. 93A") claims. *See* ECF No. 67 at 15. Bound to this clarification (ECF No. 93), the fundamental deficiencies in Appian's claims are now apparent (and reveal Appian's overreach).

In accordance with Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Pega respectfully moves to dismiss the trade libel, Lanham Act, and c. 93A claims in their entirety. Appian's claim for trade libel fails because, among other deficiencies, ***none*** of the Statements disparage Appian's products, services, or commercial activities. The Lanham Act claim fails because, similarly, ***none*** of the Statements constitute commercial advertising relating to the nature, qualities, or characteristics of a product. Finally, the Court should dismiss Appian's c. 93A claim because ***none*** of the Statements are actionable, and/or the alleged conduct occurred primarily and substantially outside Massachusetts. The Court should also strike Appian's declaratory judgment claim as extraneous and duplicative. *See* Fed. R. Civ. P. 12(f).

## I.      RELEVANT BACKGROUND

Pega's First Amended Complaint alleges that Appian made certain false and defamatory statements about the fatally flawed $2 billion Virginia verdict—which has since been overturned. ECF No. 17 ¶¶ 40-117. Appian's false statements included that Pega was convicted of a felony; Pega would be debarred from government contracts as a result; Pega's CEO accessed Appian's software using an alias; and, over a year after the verdict in the Virginia Litigation, the verdict was somehow "Breaking News"—falsely implying either that the $2 billion judgment was then due

---

[1] Pega is not seeking to dismiss the defamation claim at this time. *See* ECF No. 67 at 5; ECF No. 93. Pega expects this claim will not survive summary judgment.

and could threaten Pega's ability to continue as a going concern, or that there had been some new adverse development in the litigation for Pega. *See* ECF No. 17 ¶¶ 1-6, 40-49, 52-55, 92-99. By these false statements, Appian intended to wield the faulty verdict to harm Pega's reputation and to imply that Pega would not be financially viable, despite the clear infirmities in the verdict and the fact that Pega's appeal was pending.  ECF No. 17 ¶¶ 1-3, 40-117. Appian unsuccessfully moved to dismiss the First Amended Complaint. ECF No. 32.

In response, Appian filed its Counterclaims and Answer to the First Amended Complaint. ECF No. 44. As described below, Appian's Counterclaims essentially allege that certain of Pega's statements also relating to the Virginia verdict are actionable. *See* ECF No. 44 ¶¶ 46-129.

### A.    The Statements at Issue

#### 1.    Pega's Webpage Regarding the Virginia Litigation

Appian alleges Pega made false statements on a portion of Pega's website—what Appian calls the "Microsite." *E.g.*, ECF No. 44 ¶¶ 49-52. None of the statements concern, much less disparage, Appian's products or services. First, Appian alleges that Pega made statements misrepresenting facts about Pega itself, or other third parties—not Appian:

- **Statement #1:** Alleging that Pega's truthful statement that John Petronio—Pega's former head of competitive intelligence—hired a contractor to conduct competitive research is somehow "false and misleading" because Appian believes it obfuscates Pega's role in hiring the contractor and the knowledge of senior executives. *Id.* ¶¶ 55-56.

- **Statement #2:** Alleging that Pega's truthful statement that the contractor's work with Pega was limited to demonstrating Appian's widely available product is somehow "false and misleading" because Appian believes the phrase "widely available" overstates the

product's availability.[2] *Id.* ¶¶ 57-59.

- **Statement #3:** Alleging that Pega's truthful statement and supported opinion that Petronio, after Pega fired him and he joined Appian, "told Appian lawyers 'the story' that became the basis for" the Virginia Litigation is "misleading." Appian's position is that using the word "story"—defined by Webster's Dictionary as "an account of incidents or events"— wrongly conveys that the account Petronio told Appian was false. *Id.* ¶¶ 60-61.

- **Statement #4:** Alleging that Pega's supported opinion and position—which it was pursuing in its then-pending appeal—that (1) the Virginia Litigation was a "trade secrets case with no secrets," or "[t]here are no 'trade secrets' in this case," and (2) "Appian failed the basic threshold requirement of keeping a 'trade secret' secret," are false and misleading. *Id.* ¶¶ 62-63.[3]

- **Statement #5:** Alleging that Pega's truthful statement that Pega's CEO did not access any Appian free trials and that the suit turned on the actions of "a handful" of Pega employees accessing publicly available free trials "without identifying themselves as affiliated with Pega" is "deceptive" and "false and misleading" because Appian contends that evidence in the Virginia Litigation supports its view that the trials were not available to Pega employees, that the employees actively used aliases, and senior leadership at Pega knew about or were involved in the conduct at issue. *Id.* ¶¶ 64-75.

- **Statement #6:** Alleging that Pega's truthful statement and supported opinion that Pega

---

[2] As the Court of Appeals of Virginia held, Pega was improperly prevented from introducing evidence at trial that would show that Appian's alleged trade secrets were seen by thousands of people and prospective customers, and that Appian failed to track its dissemination. VA Op. at *32 ("This error denied Pega the opportunity to effectively argue that Appian forfeited its trade secret protection by broadly sharing the information with thousands.").

[3] Since the Counterclaims were filed, the Court of Appeals of Virginia has held that the findings that 1) Appian had protectable trade secrets, and 2) Pega engaged in trade secrets misappropriation, were both procured on a flawed evidentiary record and erroneous jury instructions, and ordered a new trial. VA Op. at *9-32.

"has the financial strength to pay [the] judgment [issued in the Virginia Litigation] if it ever becomes necessary" is somehow "false" based on Appian's "belief." *Id.* ¶¶ 76-84. The Virginia Opinion has since reversed the $2 billion verdict.

- **Statement #7:** Alleging that Pega's truthful statement and supported opinion that "three prominent voices in the intellectual property (IP) space" filed briefing in support of Pega's position in the Virginia Litigation is somehow false because the law professors at issue are not, in Appian's view, IP experts, nor the only experts in the field who participated in the litigation as amici. *Id.* ¶¶ 85-93. Appian alleges that Pega should have disclosed that Appian's own amicus was the "actual authority" on the Restatement and the "actual trade secret expert" on the proper burden-shifting of damages. *Id.* ¶¶ 91-92. The Court of Appeals of Virginia has since rejected the position taken by Appian and its amicus. VA Op. at *19.

    2.    <u>Pega's Alleged Statements to Macquarie Bank in Australia and Sun Life Financial in Canada</u>.

Appian also alleges that, upon its information and belief, Pega has made false and misleading statements to customers and potential customers with whom Appian competed against Pega for business. *See* ECF No. 44 ¶¶ 94-103.

- **Statement #8:** Alleging that Pega leaders traveled to Australia in 2023 for a meeting with Macquarie Bank Limited, repeating the claims on the Microsite, claiming that Pega had not engaged in wrongdoing in the events underlying the Virginia Litigation, and stating that Appian's claims lacked merit. *Id.* ¶¶ 97-98.

- **Statement #9:** Alleging that a Pega sales representative falsely told a potential customer in Toronto, Canada—Sun Life Financial—that Appian had engaged in "jury tampering" in the Virginia Litigation. *Id.* ¶¶ 104-12.

3.    Pega's Code of Conduct

- **Statement #10:** Alleging that the corporate Code of Conduct on Pega's public website is false and misleading because during the time the Code was published, Pega was allegedly engaging in conduct that gave rise to Appian's claims in the Virginia Litigation. *See id.* ¶¶ 117-29.[4]

**B.    A Unanimous Panel of the Court of Appeals of Virginia Reverses the $2 Billion Verdict**

On July 30, 2024, a unanimous three-judge panel of the Court of Appeals of Virginia reversed the trade secret judgment against Pega, finding "the trial court committed a series of errors," and ordering a new trial on both liability and damages. VA Op. at *1, 32. As grounds for reversal, the Court of Appeals found for Pega on each and every one of the evidentiary and jury instruction issues Pega raised in its appeal. *Id.* at *9-33. As relevant to this Motion to Dismiss, the court found that the liability verdict was unsupportable because Pega was improperly precluded from offering evidence that would have been relevant to showing that Appian's software was widely available and its purported trade secrets were not protectable as trade secrets as a matter of law. *Id.* at *24-32. Pega was moreover improperly precluded from admitting its own software into evidence. *Id.* at *27-28. Pega contends that its software would have shown that Pega did not misappropriate Appian's alleged trade secrets because the alleged trade secret features were already present or under development.

**II.    LEGAL STANDARD**

Courts apply the same standards to motions to dismiss counterclaims under Rule 12(b)(6)

---

[4] Appian also makes extensive allegations in Paragraphs 130–262 of its Counterclaims challenging Pega's First Amended Complaint itself—which has already withstood Appian's motion to dismiss. *See* ECF No. 44 ¶¶ 130–32. Appian has since confirmed that these allegations only support its claim for a declaratory judgment that Appian should prevail on Pega's First Amended Complaint, and not that the First Amended Complaint somehow constitutes a separate actionable basis for Appian's claims. *See* ECF Nos. 77, 93.

that they do when reviewing motions to dismiss a complaint. *See Lexington Luminance LLC v. Osram Sylvania Inc.*, 972 F. Supp. 2d 88, 91 (D. Mass. 2013). To survive a motion to dismiss, the counterclaim must contain "sufficient factual matter" to make it actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A counterclaim is facially plausible only if, after accepting well-pled allegations as true, the Court can draw the reasonable inference that the alleged conduct supports liability. *See Ocasio-Herndandez v. Fortuna-Burset*, 640 F.3d 1, 11 (1st Cir. 2011).

## III.   ARGUMENT

Applying Rule 12(b)(6)'s standards, Appian's trade libel claim fails to state a claim. None of the challenged statements disparage Appian's products or services, and thus are not actionable under trade libel. In fact, most of the challenged statements do not relate to Appian or its goods or services at all. For similar reasons, Appian also fails to state a claim for false advertising under the Lanham Act—none of the statements constitute commercial advertising relating to the characteristics of either Appian's or Pega's products. Finally, Appian's Counterclaim under Mass. G. L. c. 93A should be dismissed because, as the Virginia Opinion makes clear, Statements #1 through #8 and Statement #10 cannot constitute extreme or outrageous conduct sufficient to support a c. 93A claim, and moreover the remaining Statement #9 (as well as #8) comprise conduct in Australia and Canada, where the statute does not reach.

### A.   Appian Cannot State a Claim for Trade Libel

Appian cannot state a trade libel claim—also known as "product disparagement." *See Hi-Tech Pharms., Inc. v. Cohen*, 277 F. Supp. 3d 236, 249-50, n.12 (D. Mass. 2016). None of the challenged statements disparage Appian's products or services; most do not concern Appian at all. In Massachusetts, a trade libel or commercial disparagement claim requires showing that an entity "(1) published a false statement to a person other than the [claimant]; (2) *'of and concerning' the*

*[claimant's] products or services*; (3) with knowledge of the statement's falsity or with reckless

disregard for its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended

or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss."

*HipSaver, Inc. v. Kiel*, 464 Mass. 517, 523, 984 N.E.2d 755, 763 (Mass. 2013) (emphasis added)

(cleaned up). Put simply, parties pursuing a trade libel claim seek to recover damages for "false

disparaging statements" about their "property, often a product or service being sold." *Id.* at 523.

   None of the alleged statements qualifies because they do not make Appian's software or

services "the direct object of criticism." *Id.* at 766 (quoting *Blatty v. New York Times Co.*, 42 Cal.

3d 1033, 1044, 728 P.2d 1177 (1986)); *see also EMD Millipore Corp. v. HDI-Gerling Am. Ins.

Co.*, 511 F. Supp. 3d 41, 54 (D. Mass. 2021) (finding no coverage for product disparagement claim

where there is no accusation of defendant "criticizing its goods, products, or services").

### 1.   Four of the Statements Do Not Concern Appian at All

   Four of the Statements—Statements #1, #6, #7, and #10—do not concern or refer to Appian

at all. *See* ECF No. 44 ¶¶ 55–56, 76–84, 85–93, 117–129. Statement #1 relates to Pega's alleged

characterization of Petronio's conduct as a Pega employee and the alleged implications about

Pega's conduct. Statement #6 relates to Pega's alleged characterization or opinion about its own

financial strength and ability to pay a verdict "if it ever becomes necessary." Statement #7 relates

to Pega's alleged characterization or opinion about the qualifications of its own amici who

submitted briefs in support of Pega in Pega's appeal. Statement #10 relates to Pega's statements

in its Code of Conduct—a document that Pega uses to describe how Pega intends to conduct its

business. All of them concern Pega; none of them are alleged to be "of and concerning" Appian,

or its products or services. As this Court has repeatedly ruled, how a defendant describes its ***own***

conduct, products, and services does not give rise to product disparagement. *See, e.g.*, *Welch*

*Foods, Inc. v. Nat'l Union Fire Ins. Co.*, Civil Action No. 09-12087-RWZ, 2010 WL 3928704, at

*3 (D. Mass. Oct. 1, 2010) (finding advertising at issue "did not disparage POM or its products by

making false claims about them; rather, Welch is alleged to have misrepresented the content of its

*own* product.") (emphasis in original) *aff'd sub nom.*, *Welch Food, Inc. v. Nat'l Union Fire Ins.*

*Co. of Pittsburgh*, 659 F.3d 191 (1st Cir. 2011). Because none of these statements are even about

Appian (let alone its products or services), they cannot form the basis of a trade libel claim. *See*

*Hi-Tech Pharms.,* 277 F. Supp. 3d at 249 (explaining that a necessary element of trade libel is

statements "of and concerning" the plaintiff's products or services).

2.   <u>The Remaining Statements Do Not Concern or Disparage Appian's Products or Services</u>

The second category of statements relates to the alleged facts and conduct underlying the

Virginia Litigation. Even if these statements are interpreted as referring to Appian, Appian does

not (and cannot) allege they are "false disparaging statements" about Appian's products and

services such that they would support a trade libel claim. *HipSaver*, 464 Mass. at 523 (rejecting

trade libel claim because statements were not of and concerning HipSaver's products). Pega's

alleged statements reflecting its disagreement with Appian's characterization of Pega's conduct in

the Virginia Litigation include:

- **Statement #2:** The statement that Appian's product was "widely available" (ECF No. 44 ¶ 57);

- **Statement #3**: The statement that Petronio told Appian's lawyers "the story" that formed the basis for the Virginia Litigation (ECF No. 44 ¶ 60);

- **Statement #4**: The statements that the Virginia Litigation did not involve any information that properly qualified as "trade secrets" (ECF No. 44 ¶ 62);

- **Statement #5**: The statement in which Pega disputed Appian's allegation that Pega's CEO accessed Appian's free trial software and claimed that "a handful" of Pega's

9

employees accessed Appian's free trial software using aliases (ECF No. 44 ¶¶ 65-66).[5] Appian also appears to broadly assert that Pega's general denial of liability and wrongdoing to a customer while it actively pursues its appeal (Statement #8) constitutes trade libel. ECF No. 44 ¶¶ 96-98. The fact that the Virginia Appeals Court has now reversed and vacated the flawed verdict underscores the absurdity of Appian's position in this regard.

None of these Statements #2, #3, #4, #5, #8 supports a trade libel claim because they do not concern or disparage Appian's products or services. *See Hipsaver*, 464 Mass. at 523. Of these statements, the only ones that even mention Appian's products are Statements #2 and #5. But neither one concerns—much less denigrates—the quality of the products. *EMD Millipore Corp.*, 511 F. Supp. 3d at 52-53. Appian charges that Statement #2 is false on the basis that its software was not "widely available," and that Statement #5 is false because Appian (falsely) contends that Pega's CEO accessed Appian's free trial software using an alias, and moreover that stating "a handful" of Pega employees accessed publicly available free trials using aliases "downplay[ed] and mischaracterize[ed] [Pega's] conduct." ECF No. 44 ¶¶ 65-75. On the face of the allegations, neither statement disparages Appian's software.

Importantly, the VA Op. has now confirmed the truth of Pega's statements. The court has now thrown out the liability finding that Pega committed trade secret misappropriation and found that Pega was prevented from introducing evidence that could have shown that "thousands" of users had access to Appian's software, undercutting Appian's claim that it had protectable trade

---

[5] Appian has now repeatedly and intentionally mischaracterized the denial of a motion to dismiss a securities complaint against Pega by this Court as its **holding** that its trade secrets allegations in the Virginia Litigation were true. *Compare, e.g.*, ECF No. 44 ¶¶ 54, 71, 124, 126 *with City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*, 683 F. Supp. 3d 120, 134-37 (D. Mass. 2023). Appian repeats in Paragraphs 71 and 126 of the Counterclaims the falsehood that Judge Young "held" that Pega's conduct was organized and directed by "Pega's most senior executives," quoting selectively from a motion to dismiss decision that necessarily assumed that the plaintiffs' allegations were true. ECF No. 44 ¶¶ 71, 126 (citing *City of Fort Lauderdale*, 683 F. Supp. 3d at 134). The Virginia Opinion confirms that the securities litigations were meritless.

secrets. VA Op. at *30-32.[6]

Finally, the statement that Appian prevailed in the Virginia Litigation because it engaged in jury tampering (Statement #9) is the only alleged statement out of the ten that could plausibly carry defamatory meaning. *See* ECF No. 44 ¶ 106. But it, too, cannot support a claim of trade libel because it relates to Appian's litigation conduct, not its products or services. *See Hi-Tech Pharms.*, 277 F. Supp. 3d at 249. As summarized below, none of Appian's alleged statements support a trade libel claim:

| Statements Underlying Appian's Trade Libel Claim | | | | |
|---|---|---|---|---|
| # | Challenged Statement | ECF No. 44 ¶¶ | Concerning Appian? | Disparaging Appian's Products or Services? | Actionable Trade Libel? |
| 1 | Petronio hired a contractor to engage in competitive intelligence work | 55-56 | No | No | **No** |
| 2 | The contractor demonstrated Appian's widely available product | 57-59 | Yes | No | **No** |
| 3 | Petronio told Appian's lawyers "the story" that formed the basis for the Virginia Litigation | 60-61 | Yes | No | **No** |
| 4 | Appian did not keep purported "trade secrets" secret | 62-63 | Yes | No | **No** |
| 5 | Appian's statement that Pega's CEO accessed Appian free trials is categorically false, and a handful of Pega employees accessed publicly available free trials of Appian software | 64-75 | Yes | No | **No** |

---

[6] Independently, it is apparent that these Statements are not actionable because they do not constitute verifiable statements of fact and instead are more akin to opinion. *See Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 531 (1st Cir. 2023) ("[A] statement of fact can be actionable as product disparagement, but a statement of opinion cannot."). Phrases such as "widely available," "the story," and "a handful," and the assertion that Appian's purported "trade secrets" did not qualify as such, would not be understood by a reasonable reader as containing "objectively verifiable facts" because "it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise." *Scholz v. Delp*, 473 Mass. 242, 251 (Mass. 2015) (finding statements to be non-actionable opinions) (cleaned up).

| Statements Underlying Appian's Trade Libel Claim | | | | | |
|---|---|---|---|---|---|
| 6 | Pega has the financial strength to pay the judgment in the Virginia Litigation | 76-84 | No | No | **No** |
| 7 | Prominent IP experts support Pega's position in the Virginia Litigation | 85-93 | No | No | **No** |
| 8 | Pega did not engage in wrongdoing in the conduct underlying the Virginia Litigation | 96-98 | Yes | No | **No** |
| 9 | Appian prevailed in the Virginia Litigation due to jury tampering | 104-110 | Yes | No | **No** |
| 10 | Pega's Code of Conduct stating that Pega conducts its business with integrity | 117-129 | No | No | **No** |

### B.    Appian Fails to State a False Advertising Claim Under the Lanham Act

For similar reasons, Appian's Lanham Act false advertising claim also fails because none of the Statements constitutes commercial advertising that "misrepresents the nature, characteristics, [or] qualities" of Appian's or Pega's products. 15 U.S.C. § 1125(a)(1)(B); *see Williams-Sonoma, Inc. v. Wayfair Inc.*, 652 F. Supp. 3d 216 (D. Mass. 2023) (dismissing false advertising claim). To plead a false advertising claim under Section 43(a)(1)(B) of the Lanham Act, a plaintiff must establish:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*See id.* at 221-22 (citing *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2022)). Each of the Statements fails to allege one or more elements.

1.   Appian Fails to Allege that Statements #1-10 Concern the Nature,
Characteristics, or Qualities of a Product

As with the trade libel claims, none of the statements concern the nature, characteristics, or qualities of a product, whether Appian's or Pega's. Nine out of the ten are easily disposed of: Statements #1, #3-5, #8-10 all concern Pega's statements about conduct relating to the Virginia Litigation, including Pega's Code of Conduct; Statement #6 relates to Pega's financial strength as a business, and Statement #7 concerns the qualifications of two individuals who made filings as amici in litigation supporting Pega. *See, e.g.*, *supra*, p. 9.

Appian may point to Statement #2 to try and save its claim; Appian alleges it is misleading because it states that Appian's software is "widely available" when Appian contends it is, instead, exclusive and not publicly-available. ECF No. 44 ¶¶ 62-68. But as this Court explained in *Williams-Sonoma*, the availability of a product is not a quality or characteristic of the good. 652 F. Supp. 3d at 223-24 ("[Misrepresentations are only actionable under the false advertising prong if the advertising misrepresents the characteristics of the good itself—such as its properties or capabilities.") (cleaned up). In *Williams-Sonoma*, the Court found the challenged statements at issue that conveyed exclusivity, using phrases like "looks you'll only find at Wayfair," were alleged to mislead consumers only as to ***where*** the products were available. *Id.* at 224. The Court thus granted the defendant's motion to dismiss the Lanham Act false advertising claim, finding "[t]hese statements of exclusivity more closely relate to misrepresentations about the origin of goods." *Id.* Statement #2 fails here for exactly the same reason. Given none of the statements are redressable under 15 U.S.C. § 1125(a)(1)(B), the Lanham Act claim should be dismissed.

2.   Appian Fails to Allege that Statements #8 and #9 Constitute Commercial
Advertising

Statements #8 and #9 fail to state a Lanham Act claim for the additional reason that the statements do not constitute commercial advertising. *See Ultra-Temp Corp. v. Advanced Vacuum*

*Systems, Inc.*, 27 F. Supp. 2d 86 (D. Mass. 1998) (granting summary judgment in favor of defendant where alleged misrepresentation was not commercial advertising). The Lanham Act prohibits "misrepresentations only in 'commercial advertising or promotion.' This is a crucial limitation[.]" *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003) (affirming motion to dismiss for failing to allege statement constituted commercial advertising). The test requires that a representation must (a) constitute commercial speech and be (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) made by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) ***disseminated to the consuming public in such a way as to constitute "advertising" or "promotion." Id.*** (emphasis added). This Court in *Ultra-Temp*, resolving the issue for the first time, concluded that "a single false statement to a single customer" was not sufficient public dissemination to constitute advertising upon which to premise liability under the Lanham Act. *Ultra-Temp*, 27 F. Supp. 2d at 9 (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 27:71, at 27-108-109 and n.8 (1998) ("Almost all courts have said no.")). Nor do multiple individual meetings suffice where there is no showing of "widespread dissemination" through a public medium. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2022) ("[B]usinesses harmed by isolated disparaging statements do not have redress under the Lanham Act.").

Appian thus cannot satisfy the last factor for Statements #8 and #9. As for Statement #8, Appian alleges that Pega made a presentation to Macquarie Bank. ECF No. 44 ¶¶ 97-101. As for Statement #9, Appian alleges that a Pega employee made a single false statement to Sun Life. ECF No. 44 ¶¶ 104-112. Neither instance involved public dissemination through any medium to the consuming public, nor would Appian's bare allegations that this happened with other, unnamed

customers "on information and belief" suffice. *See Fashion Boutique*, 314 F.3d at 57. As in *Ultra-Temp*, the mere alleged conveyance of a statement to a single customer does not suffice to plead a core element of the Lanham Act. *See* 27 F. Supp. 2d at 95.

### C.   Appian Fails to State a Claim Under M.G.L. c. 93A

Finally, Appian's unfair competition claim under M.G.L. c. 93A cannot proceed on the basis of any of Statements #1-10. Particularly in light of the complete reversal of the $2 billion verdict in the Virginia Litigation, Appian cannot allege that Pega's Statements defending its legal position in the then-pending appeal—***which have now been shown to be successful***—somehow constitute extreme or outrageous conduct sufficient to support a c. 93A claim. This is especially clear given that none of the statements facially state a trade libel or Lanham Act violation. *See supra* Sections III(A) and III(B). Moreover, a c. 93A claim cannot proceed to the extent it targets alleged conduct occurring primarily outside the Commonwealth of Massachusetts, independently barring Appian from stating a c. 93A claim based on Statements #8 (Australia) and #9 (Canada). *See* M.G.L. c. 93A § 11; ECF No. 44 ¶¶ 101, 112.

### 1.   Appian Fails to Allege Extreme or Outrageous Conduct Sufficient to Support a Chapter 93A Claim (Statements #1-8, #10)

Appian fails to state a c. 93A claim for nine of the ten alleged Statements because they would reflect Pega's defense of its reasoned legal positions in connection with the then-pending appeal of the $2 billion trade secrets verdict. The Court of Appeals of Virginia's decision reversing that verdict of trade secret misappropriation vindicates Pega's long-standing position that the verdict was procured only as a result of myriad evidentiary and jury instruction errors. Pega contended that it was improperly prevented from offering evidence during the trial to show that Appian's purported trade secrets were not trade secrets—including because Appian's software was widely available—and that nothing was misappropriated. *See* VA Op. at *10. Pega further

contended that the damages figures were legally unsupportable. The Court of Appeals of Virginia has now agreed with Pega on each and every one of the evidentiary and jury instruction grounds Pega raised, reversing the $2 billion judgment in its entirety and ordering a new trial.

To the extent Pega's statements advocated for its legal position consistent with its pending appeal, they cannot form the basis of a c.93A claim. The statute targets "unfair methods of competition" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 15 (1st Cir. 2021) (cleaned up). But Massachusetts courts have held that a party's pursuit of a "plausible, reasoned legal position" is nonactionable under c.93A, even if the position "may ultimately turn out to be mistaken [or] unsuccessful." *Guity v. Com. Ins. Co.*, 631 N.E.2d 75, 77 (Mass. App. Ct. 1994). This applies to statements based on litigation positions as well. *Aquino v. Pacesetter Adjustment Co.*, 416 F. Supp. 2d 181, 200 (D. Mass. 2005) (holding statements resulting from "a reasonable, albeit mistaken, interpretation of the insurance policy . . . are not actionable under Chapter 93A"). Simply put, c. 93A does not "establish an independent remedy for unfair or deceptive dealings in the context of litigation." *Morrison v. Toys "R" Us, Inc.*, 806 N.E.2d 388, 392 (Mass. App. Ct. 2004); *Rental Prop. Mgmt. Servs. v. Hatcher*, 97 N.E. 3d 319, 330 (Mass. 2018) ("Generally, litigation conduct alone is not a sufficient basis for a c. 93A claim.").

Here, this principle defeats Appian's c. 93A claim as to Statements #1-5, 8, and 10 because a unanimous appellate court has issued a decision consistent with Pega's advocacy for its legal position in connection with those statements. Specifically, the Court of Appeals of Virginia reversed the trade secret verdict and ordered a new trial based on Pega's arguments about 1) whether the parties' trade secret case involved actual "trade secrets" (Statements #2, 4); 2) whether Appian's software was widely available (Statement #2); and 3) whether any alleged

misappropriation or misconduct even occurred given that Pega was prevented from entering evidence that would be "a principal means of demonstrating it did not steal secrets through Zou[.]" VA Op. at *32 (Statements #1, 3, 5, 8, 10). The VA Op. confirms that Pega's advocacy for a reversal and/or a new trial on these issues carried legal weight, even though Appian may continue to vigorously disagree. *See PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011) (no defamation or Lanham Act claims based on true statements plaintiff made involving prior litigation). If "mistaken" and "unsuccessful" statements about litigation cannot form the basis of a c. 93A claim, statements that were successful surely cannot "ris[e] to the level of extreme or egregious conduct [] required for a successful Chapter 93A claim." *Anoush Cab*, 8 F.4th at 18.

Statements #6 and #7 also cannot form the basis of a c. 93A claim because they do not constitute "unfair or deceptive acts or practices in the conduct of any trade or commerce," much less "extreme or egregious conduct." *Anoush Cab*, 8 F.4th at 15-18. As to Statement #7, Appian alleges that Pega overstated the expertise of its own amici when it allegedly wrote that "three prominent voices in the intellectual property (IP) space" filed briefing in support of Pega's position in the Virginia Litigation. That Appian disagrees with Pega's opinion that two of the law professors referenced in this statement were "prominent voices" in IP, in the context of litigation, is not the stuff of c. 93A.[7] *See Valley Children's Hosp. v. Athenahealth, Inc.*, No. 22-CV-10689-DJC, 2023

---

[7] Appian's alternate theory that Pega's statement falsely implied that its amici were somehow the "only experts in the field" of intellectual property and concealed the fact that Appian, too, had an amicus, does not even pass muster. No reasonable reader would understand Pega's statement about "three prominent voices in the [IP] space" to mean that Pega's amici were the only experts in the entire field of IP, or even the only amici involved in the litigation. *See Dobelle v. Flynn*, 12 F. Supp. 3d 274, 297 (D. Mass. 2014) ("Words are to be read in their natural sense with the meaning which they would convey to mankind in general.") (cleaned up); ECF No. 44 ¶ 86. Regardless, Appian's allegation that its amicus was the "actual authority" on the Restatement and refuted a "core pillar" of Pega's damages argument both 1) demonstrates that Statement #7 is opinion and 2) falls flat, especially in the face of the VA Op., which rejects Appian's amicus. The court specifically recognized that the damages instruction advanced by Appian "wholly misconstrued the Restatement framework," that it "contravenes Virginia case law, VUTSA's express language, and the Restatement's own burden-shifting framework," and that endorsing Appian's position "exponentially increased the likelihood of a runaway damages verdict that had no correlation to proximate cause." *See* VA Op at *24.

WL 6065800, at *5 (D. Mass. Sept. 18, 2023) (noting statements of opinion are not actionable under c. 93A). As for Statement #6, relating to Pega's statement about its "financial strength to pay a judgment if it ever becomes necessary," the vacating of the $2 billion verdict has revealed Pega's statement to be true. Pega's series of statements that reflected true facts, opinion, or sincerely held beliefs about its legal position in a pending appeal—which an appellate court has found persuasive—cannot form the basis of a pleading of unfair or deceptive acts in the conduct of trade or commerce. Moreover, Appian cannot proceed on a c.93A claim where it is based on the same alleged statements that fail to state any other claim in Appian's Counterclaims. *See Skehel v. DePaulis*, No. 13-cv-11202-ADB, 2017 WL 2380164, at *2 (D. Mass. June 1, 2017) (holding c. 93A claim "cannot succeed" when it is "derivative of … unsuccessful claims"); *see supra* Sections III(A) and III(B). The c. 93A claim must be dismissed as to Statements #1-8 and 10 on this basis.

2.    Appian Fails to Allege Conduct Occurring Primarily and Substantially Within the Commonwealth of Massachusetts (Statements #8 and #9)

Statements #8 and #9 fail for the additional, independent reason that they did not "occur[] primarily and substantially within" Massachusetts. Mass Gen. Laws c. 93A § 11; *see Kuwaiti Danish Comp. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 472 (2003) (reversing and ordering judgment to enter for defendant on c. 93A count where all alleged unfair conduct occurred outside Massachusetts). The Massachusetts Supreme Judicial Court (SJC) in *Kuwaiti Danish Computer* teaches that the relevant analysis looks to the geography where "the wrongful conduct occurred." 438 Mass. at 474. Here, Appian alleges that the wrongful conduct in connection with Statements #8 and #9 occurred outside Massachusetts, barring its c. 93A claim.

Specifically, the alleged presentations to Macquarie (Statement #8) and Sun Life (Statement #9) took place outside the United States. *See* ECF No. 44 ¶¶ 101, 112. That should end

the inquiry. Appian cannot argue that the claim should survive based on the geography of any alleged harmful effects, given that that location would be in Virginia, where Appian is based, not Massachusetts. *See id.* ¶ 15; *see also Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs., Inc.*, 712 N.E.2d 607, 611-12 (Mass. App. Ct. 1999) (affirming dismissal of c. 93A claim and observing that the trial court correctly "put stress on the place or places of occurrence of the offending acts" to find "neither the preponderance of wrongful conduct nor the underlying transactions occurred primarily and substantially in Massachusetts.").

In a transparent attempt to plead around this statutory requirement, Appian alleges that Statements #8 and #9 were "crafted," and the corresponding meetings were "arranged," in Massachusetts. ECF No. 44 ¶¶ 112, 301. This is unavailing under *Kuwaiti Danish Computer* because the wrongful conduct at issue was the alleged ***delivery*** of the statements to Macquarie and Sun Life, which Appian alleges took place in Australia and Canada. ECF No. 44 ¶¶ 101, 112; *see* 438 Mass. at 473-75. In *Kuwaiti Danish Computer*, for instance, the alleged wrongful acts involved negotiations that resulted in a failed transaction, where the negotiations took place in Washington, D.C. *Id.* at 462, 470-74. The defendant withdrew from the transaction because it purportedly conflicted with its corporate policies that were created, issued, and imposed from the defendant's headquarters in Massachusetts, and the plaintiff filed suit, relying on that Massachusetts conduct to plead its Chapter 93A claim. *Id.* at 470-74. Despite the plaintiff's argument to the contrary, however, the SJC held that the creation, issuance, and imposition of the policies in Massachusetts could not form the basis of claim because that conduct was not alleged to be the wrongful act. *Id.* at 474-75. The SJC thus held that the claim was not based on conduct occurring primarily and substantially in Massachusetts, reversed the trial court, and ordered judgment for the defendant on the Chapter 93A claim. *Id.* The same result should hold here.

### D.   Appian's Redundant Declaratory Judgment Claim Should Be Stricken

The Court should strike Appian's declaratory judgment Counterclaim, ECF No. 44 ¶¶ 304, 308, because it merely seeks "the opposite effect of [Pega's] Complaint." *Zurich Am. Ins. Co. v. Watts Regul. Co.*, 796 F. Supp. 2d 240, 246 (D. Mass. 2011) (striking declaratory judgment counterclaim pursuant to Rule 12(f)) (quoting *In re Feeley*, 393 B.R. 43, 51 (Bankr. D. Mass. 2008)). As Appian concedes, "Count V seeks a declaration that Appian did not commit defamation, trade libel, or Lanham Act false advertising in making the statements attributed to it in the Amended Complaint" on the basis that its alleged false statements were "true, substantially true, or opinion." ECF No. 67 at 18. Thus, Appian's declaratory judgment Counterclaim merely "reiterate[s] affirmative defenses asserted and . . . address[es] issues already before the Court by virtue of [Pega's] amended complaint" and should be stricken because it is repetitive and unnecessary. *Zurich*, 796 F. Supp. 2d at 246; *see also Transpac Marine, LLC v. Yachtinsure Servs., Inc.*, 655 F. Supp. 3d 18, 29 (D. Mass. 2023) (striking counterclaims redundant of affirmative defenses and noting court's discretion under 28 U.S.C § 2201 to entertain a counterclaim for declaratory judgment). Paragraphs 130-262 of the Counterclaims, which Appian contends only "provide the factual predicate" for the redundant Counterclaim, ECF No. 67 at 18, should also be stricken so as to remove "unnecessary clutter from the case." *Zurich*, 796 F. Supp. 2d at 246.[8]

## IV.   CONCLUSION

For these reasons, Pega asks the Court to dismiss Appian's trade libel, Lanham Act, and c. 93A Counterclaims in their entirety, with prejudice, and to strike Appian's declaratory judgment Counterclaim.

Date: August 15, 2024                                     Respectfully submitted,

---

[8] The Court has not yet appeared to rule on Pega's prior motion on Rule 12(f) grounds relating to the declaratory judgment allegations, and in that case Pega renews the request for relief here. *See* ECF Nos. 56-57; 93 (denying "Motion for More Definite Statement" in light of Appian's clarifications).

PEGASYSTEMS INC.

By its attorneys,

___*/s/ R. David Hosp*_____
R. David Hosp (BBO No. 634091)
Mark S. Puzella (BBO No. 644850)
Sheryl K. Garko (BBO No. 657735)
Caroline K. Simons (BBO No. 680827)
Katherine E. Kerrick (BBO No. 707966)
Oliver J. McNicholas (BBO No. 711893)

ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 880-1800
Fax: (617) 880-1801
dhosp@orrick.com
mpuzella@orrick.com
sgarko@orrick.com
csimons@orrick.com
kkerrick@orrick.com
omcnicholas@orrick.com

Olivia H. Clements (*pro hac vice*)
Lindsay M. Rindskopf (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd Street
New York, New York 10019
Tel: (212) 506-3670
Fax: (212) 506-5151
oclements@orrick.com
lrindskopf@orrick.com

Aaron Brecher (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone (206) 839-4300
Fax (206) 839-4301
abrecher@orrick.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 15, 2024, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.


Dated: August 15, 2024                                      */s/ R. David Hosp*
                                                            R. David Hosp