UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PEGASYSTEMS INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 23-11776-LTS |
| APPIAN CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON PENDING MOTIONS (DOC. NOS. 136, 153, 165, 178)

March 10, 2025

SOROKIN, J.

Pegasystems Inc. ("Pega") has sued Appian Corporation, and Appian has counter-sued, on the basis of alleged false statements each party has made relating to separate and ongoing litigation between the two in Virginia state court.[1] Pending before the Court are various requests relating to discovery and case management. For the reasons stated below, the Court resolves those requests as follows: (1) Appian's Motion for a Partial Stay of Discovery, Doc. No. 136, is DENIED AS MOOT; (2) Pega's Motion to Compel Documents and Communications Relating to Pega's Viability and Solvency (the "Viability Motion"), Doc. No. 153, is DENIED IN PART, DENIED WITHOUT PREJUDICE IN PART, and ALLOWED IN PART; (3) Appian's Motion to Quash, Doc. No. 153, is ALLOWED; (4) Pega's Request for a Status Conference, Doc. No. 165, is DENIED AS MOOT; and (5) Pega's Motion to Compel Production of Outstanding

---

[1] That case resulted in a judgment (the "Virginia Verdict") of over $2 billion against Pega. That judgment was partially reversed on appeal.

Documents (the "Outstanding Documents Motion"), Doc. No. 178, is DENIED WITHOUT PREJUDICE.[2]

I. APPIAN'S MOTION FOR A PARTIAL STAY OF DISCOVERY

Appian asks the Court to enter a partial stay of discovery, suspending all depositions and expert discovery, pending resolution of Appian's Motion for Partial Judgment on the Pleadings ("12(c) Motion"). Doc. No. 136. The Court has already, by joint request of the parties, suspended all discovery deadlines pending resolution of Appian's Motion for a Partial Stay. Doc. Nos. 157, 159. Because the Court has now resolved the 12(c) Motion, Doc. No. 184, Appian's Motion for a Partial Stay is DENIED AS MOOT, and the suspension of discovery deadlines is lifted.

II. PEGA'S VIABILITY MOTION

Pega seeks an order compelling "party and non-party discovery relating to the false and defamatory statements Appian made to third parties intended to convey that the faulty (and now overturned) Virginia Verdict would result in Pega ceasing to be financially viable or financially solvent." Doc. No. 153-18 at 9. Under Rule 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). Generally, a party is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Thus, on a motion to compel, the moving party bears the initial burden of showing that the requested discovery meets the above relevance requirement. Roy v. FedEx Ground Package Sys., Inc., 675 F. Supp. 3d 140, 144 (D. Mass. 2023). If the moving party makes that showing,

---

[2] Citations to "Doc. No. __" refer to documents appearing on the court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or to the paragraph numbers used by the document in question.

the burden then shifts to the non-moving party to show that the requested discovery is otherwise improper. Id.

Previously, the Court required discovery of statements "substantially similar" to the statements alleged in the Amended Complaint. Doc. No. 125 at 20. The parties now dispute what falls within that phrase. The discovery that Pega seeks from Appian concerns statements substantially similar to at least one set of statements alleged in the Amended Complaint: a series of posts on LinkedIn and other social media sites made by Appian around the summer of 2023 (the "LinkedIn Posts").[3] As the Court explained in its Order on the 12(c) Motion, the pleadings plausibly allege that the LinkedIn Posts conveyed the false statement that Pega had not appealed the Virginia Verdict and presently owed the full judgment. Doc. No. 184 at 9–12. Pega's Amended Complaint alleges that the LinkedIn Posts, along with other statements, were intended to cast doubt on Pega's "ongoing viability." Doc. No. 17 ¶ 98. Thus, one of Pega's claims is that Appian made a false statement disparaging Pega's ability to continue as a business in the face of the Virginia Verdict. Those allegations, along with Appian's commitment to producing discovery "reflecting each of the Challenged Appian Statements [from Pega's Amended Complaint] (as well as any substantially similar statements), and documents reflecting their creation, veracity, and dissemination," Doc. No. 99 at 13, bring the discovery sought by Pega's Motion to Compel within the proper scope of Rule 26.[4]

---

[3] The LinkedIn Posts include, at least, a mock newspaper front page and an image from a mock news broadcast, each containing some variation of "BREAKING NEWS," "APPIAN WINS $2.1B VS. PEGA," and "PEGA DOESN'T APPEAL VIRGINIA COMPUTER CRIMES ACT VERDICT." Doc. No. 17 ¶¶ 94–95.

[4] Pega also ties its requested discovery to an alleged statement made by Appian CEO Matt Calkins, on which the Court has now granted Appian judgment, and Appian's counterclaims alleging that Pega made false statements about its ability to pay the Virginia Verdict. The Court does not reach either of those arguments.

To the extent Pega seeks to compel non-party discovery in the form of compliance with its subpoena to Aon Risk Services Northeast, Inc., the Viability Motion is DENIED in accord with the Court's ruling on Appian's Motion to Quash.  See infra Section III.  To the extent Pega seeks to compel discovery from any other non-party, the Motion is DENIED WITHOUT PREJUDICE because Pega has not identified the other non-parties from whom it seeks discovery or why such discovery is warranted under the law.  Otherwise, Pega's Motion is ALLOWED.  Appian shall produce discovery relating to statements Appian made to third parties that stated or could be reasonably understood by a listener as stating that paying the Virginia Verdict would threaten the financial viability or solvency of Pega.

III.    APPIAN'S MOTION TO QUASH

Appian moves to quash a subpoena Pega has served on Appian's judgment-preservation insurance broker Aon Risk Services Northeast, Inc.[5]  Doc. No. 153-18 at 1.  This subpoena, as revised by Pega after conferral with Appian, makes four document requests at issue here.[6]  Each request warrants quashing.

Rule 45 allows a party to serve a subpoena on a non-party.  See Fed. R. Civ. P. 45.  The scope of such a subpoena is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b); see also NuVasive, Inc. v. Rival Med., LLC, No. CV 21-11644, 2022 WL 788615, at *1 (D. Mass. Mar. 15, 2022) ("A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." (quotations omitted)).  Ordinarily, a party lacks standing to object to a non-

---

[5] In the alternative, Appian asks the Court to enter a protective order barring Pega from pursuing the subpoena.  Doc. No. 153-18 at 1.  Because the Court allows the Motion to Quash, the Court need not consider Appian's alternative request.

[6] The original subpoena included two more, Request Nos. 1 and 2.  Doc. No. 153-18 at 4.  Because Pega has withdrawn those requests, the Court does not consider them here.

party subpoena unless "the information sought by the subpoena implicates a personal right or privilege of the party." Ponder v. Ocwen Loan Servicing, LLC, No. CV 19-MC-91215, 2019 WL 2249675, at *2 (D. Mass. May 24, 2019). "The personal right or privilege claimed need not be weighty: parties need only have some personal right or privilege in the information sought to have standing to challenge a subpoena to a third party." Degrandis v. Children's Hosp. Bos., 203 F. Supp. 3d 193, 198 (D. Mass. 2016) (quotations omitted) (emphasis in original).

Here, Appian has standing to challenge the subpoena because its subject matter implicates a personal right of Appian to its confidential business information.[7] See Weinreich v. Brooks, No. CV 21-10496, 2022 WL 2373796, at *3–4 (D. Mass. Apr. 4, 2022) (finding standing based on "confidential business information to which the defendants have a personal right"). For example, the subpoena's third request seeks "[a]ll written nondisclosure and/or common interest agreements [Aon] entered into with Appian relating to the [judgment-preservation insurance] Policy." Doc. No. 153-18 at 4. Such agreements would likely constitute confidential business information sufficient for standing to challenge the subpoena. Degrandis, 203 F. Supp. 3d at 198 ("The court therefore finds that the materials . . . may implicate DeGrandis's privacy rights, and thus, he has standing to challenge the subpoena." (emphasis added)). Even if Appian did not have standing, the Court would reach the merits of the subpoena pursuant to its duty to limit discovery where "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii); see also SEC v. Navellier & Assocs., Inc., No. 17-CV11633, 2019 WL 688164, at *2 (D. Mass. Feb. 19, 2019) (noting court's power to evaluate subpoena absent party standing).

---

[7] Appian also asserts that the subpoena seeks documents subject to work-product protection "among other privileges." Doc. No. 153-18 at 5. Given its finding that responsive documents may reveal confidential business information, the Court need not reach that assertion.

As to the merits, the matters sought by the subpoena fall outside of the scope of proper discovery.  Documents responsive to Request No. 3, which seeks all agreements between Aon and Appian as quoted above, would not be relevant to this case.  That Appian sought work-product protection over such agreements in opposition to a now-resolved motion to compel, Doc. No. 99 at 18, does not mean that those agreements are relevant to any party's claim or defense.  Nor does the assertion of such protection as grounds for standing to challenge the subpoena of documents make those very same documents relevant.

Request No. 5, seeking communications between Aon and third parties relating to both the judgment-preservation insurance policy and the statements challenged in this case, similarly fails on relevance.  Any defamatory statements made by Appian to Aon would be captured by Request No. 4, and there is no reason that Aon's comments about such statements to third parties would affect Pega's claims here.

Request No. 6 seeks "[a]ny internal documents relating to [Aon's] understanding of the Challenged Appian Statements in the Action."  Doc. No. 153-18 at 4.  This request lacks relevance because—to the extent Pega's claims require proof of third-party confusion—Pega's Amended Complaint asserts that Appian's statements caused Pega harm via confusion among customers and potential customers.  <u>E.g.</u>, Doc. No. 17 ¶¶ 132–33, 138–40.  There is no allegation that Aon was or is either.  Responsive documents would not be relevant to Appian's counterclaims asserting false and defamatory statements by Pega for similar reasons.

Finally, Request No. 4 is improper for a separate reason.  This request seeks communications between Aon and Appian relating to both the policy and the statements challenged in this case.  Doc. No. 153-18 at 4.  Documents responsive to this request could be obtained directly from Appian.  The Court must limit discovery where "the discovery sought . . .

can be obtained from some other source that is more convenient [or] less burdensome." Fed. R. Civ. P. 26(b)(2)(C)(i). Because Pega can presumably obtain the requested documents from Appian just as easily, the Court declines to burden a non-party with their production. See Ponder, 2019 WL 2249675, at *2 ("[I]f material sought by subpoena is readily available to a party in the action, . . . then obtaining it through subpoena on a nonparty often will create an undue burden." (quotations omitted)).[8] Besides, to the extent this request seeks relevant documents, those documents would likely be peripheral to this case at best.

Appian's Motion to Quash, Doc. No. 153, is ALLOWED.

IV.  PEGA'S REQUEST FOR A STATUS CONFERENCE

Next, Pega requests a status conference. Doc. No. 165. According to Pega, discovery "has revealed additional statements made by Appian that [Pega] believes are independently actionable but similar in nature . . . to statements identified in its First Amended Complaint." Id. at 1. Pega expects to find additional such statements as discovery continues, so it would like a status conference to "seek[] guidance from the Court on the most efficient manner to update its pleadings without necessitating repeated Motions to Amend its Complaint." Id. Appian opposes. Because this case already has a status conference scheduled for March 27, Pega's request, Doc. No. 165, is DENIED AS MOOT.[9]

V.  PEGA'S OUTSTANDING DOCUMENTS MOTION

Finally, Pega, on February 20, requested "an order compelling Appian to substantially complete its production of documents responsive to Pega's first set of Requests for Production,

---

[8] Because Request No. 3 fails on the threshold issue of relevance, the Court need not determine whether the same reasoning would apply to that request.
[9] Nothing prevents Pega from raising the subject of a potential motion to amend—or any other subject relevant to this litigation—at the March 27 status conference. However, not every topic raised at a status conference necessarily warrants a ruling from the Court.

as modified by the parties' negotiations, . . . by February 28, 2025." Doc. No. 178-22 at 1. Obviously, this deadline has passed. Nevertheless, the Court briefly addresses Pega's request.

In short, Pega's Outstanding Documents Motion is premature. This case previously had a fact discovery deadline of February 21, 2025. However, as mentioned above, the Court stayed all discovery deadlines at the joint request of the parties on January 21. When Pega filed the Outstanding Documents Motion, then, Appian had not failed to produce the requested documents by any enforceable deadline. Cf. Fed. R. Civ. P. 37(a)(3)(B)(iv) (authorizing motion to compel where "a party fails to produce documents"). Indeed, on most of Pega's requests, Appian says it either has produced all responsive documents within the scope of discovery in this case or will be producing more documents. Doc. No. 178-22 at 7–10. The Court anticipates setting a new deadline for the completion of fact discovery now that the former deadline has passed and the suspension of deadlines is lifted. That being the case, Pega's Outstanding Documents Motion, Doc. No. 178, is DENIED WITHOUT PREJUDICE.

## VI. CONCLUSION

For the reasons stated, the Court makes the following rulings:

- Appian's Motion for a Partial Stay of Discovery, Doc. No. 136, is DENIED AS MOOT.

- Pega's Viability Motion, Doc. No. 153, is DENIED IN PART, DENIED WITHOUT PREJUDICE IN PART, and ALLOWED IN PART. It is denied to the extent Pega seeks to compel non-party discovery from Aon Risk Services Northeast, Inc., pursuant to the subpoena that is the subject of Appian's Motion to Quash. It is denied without prejudice to the extent Pega seeks to compel discovery from any other non-party. It is allowed to the extent Pega seeks to

compel discovery from Appian relating to statements Appian made to third parties stating or implying that paying the Virginia Verdict would threaten the financial viability or solvency of Pega.

- Appian's Motion to Quash, Doc. No. 153, is ALLOWED.
- Pega's Request for a Status Conference, Doc. No. 165, is DENIED AS MOOT.
- Pega's Outstanding Documents Motion, Doc. No. 178, is DENIED WITHOUT PREJUDICE.
- The suspension of discovery deadlines is lifted.

At least two days in advance of the status conference scheduled for March 27, 2025, the parties shall file a joint status report setting forth their joint or separate positions as to any necessary adjustments to this case's discovery deadlines and any other matter either party wishes to raise with the Court.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge