UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PEGASYSTEMS INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 23-11776-LTS |
| APPIAN CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON APPIAN'S MOTION TO COMPEL (DOC. NO. 268)

July 21, 2025

SOROKIN, J.

    Defendant Appian Corporation has filed a motion to compel the production of documents withheld by plaintiff Pegasystems Inc. ("Pega") under the work-product doctrine or the attorney-client privilege. Doc. No. 268.[1] The subject documents relate to a public relations firm, Edelman, that Pega hired in the wake of an unfavorable jury verdict in the litigation underlying the present lawsuit (the "Virginia Litigation"). After this case's most recent status conference on July 9, 2025, the Court ordered Pega to produce for in camera review a sample of the subject documents identified by both parties. Having reviewed those documents, the Court now makes the following rulings on a subset of that sample, ALLOWING IN PART and DENYING IN PART Appian's motion and holding the remainder in abeyance for the time being.

    The work-product doctrine protects only those "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."

---

[1] Citations to "Doc. No. __" refer to documents appearing on the court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header.

Fed. R. Civ. P. 26(b)(3)(A). "It is not enough . . . that the subject matter of a document relates to a subject that might conceivably be litigated" or "that the materials were prepared by lawyers or represent legal thinking." United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 29 (1st Cir. 2009) (emphasis in original). Rather, the doctrine is "aimed centrally at protecting the litigation process, . . . specifically, work done by counsel to help him or her in litigating a case." Id. at 30–31 (emphasis in original) (citation omitted). Therefore, where a document's purpose relates both to litigation strategy and public relations, a document will only be protected if it "would not have been created in substantially similar form but for the prospect of litigation" and "the litigation purpose so permeates any PR purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." Stardock Sys., Inc. v. Reiche, No. 417CV07025SBAKAW, 2018 WL 6259536, at *3 (N.D. Cal. Nov. 30, 2018) (citation modified). And even where the work-product doctrine applies, its protection can be waived. However, "disclosure of work-product to a third-party does not necessarily waive the protection; only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." Blattman v. Scaramellino, 891 F.3d 1, 5 (1st Cir. 2018) (quotations omitted).

The attorney-client privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." United States ex rel. Wollman v. Mass. Gen. Hosp., Inc., 475 F. Supp. 3d 45, 63 (D. Mass. 2020) (quotations omitted) (quoting Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011)). "Generally, disclosing attorney-client communications to a third party undermines the privilege." Cavallaro v. United States, 284 F.3d 236, 246–47 (1st Cir. 2002). Under the so-called Kovel doctrine established in United States v. Kovel, 296 F.2d 918 (2d Cir. 1961), though, "[a]n exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice,"

2

Cavallaro, 284 F.3d at 247.  For Kovel to apply, the third party's assistance "must be necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."  Id. at 247–248 (quotations omitted).  "Third parties must do more than merely offer their advice and perspective, rather they must interpret or translate matters that are beyond the lawyer's reach or competence and would otherwise interfere with the attorney-client communications."  Gattineri v. Wynn MA, LLC, No. 18-CV-11229-FDS, 2021 WL 8649392, at *2 (D. Mass. Aug. 25, 2021) (quotations omitted).  Finally, "the advice must be legal; business advice will not sustain the exception."  Bozorgi v. Cassava Scis., Inc., No. 1:21-CV-00751-DAE, 2024 WL 2874636, at *3 (D. Mass. May 9, 2024).[2]

The Court now applies these principles to fifteen of the withheld documents.  As to Log. No. 107, Appian's motion is ALLOWED.  Although the emails therein relate to the Virginia Litigation, the focus is on responding to a customer's question, not preparing materials in anticipation of litigation or for trial.

---

[2] Pega also contends the functional-equivalent doctrine means that the inclusion of Edelman in attorney-client communications in this case did not waive privilege.  That doctrine holds that "certain third-party agents of corporate entities, such as consultants, can be considered the 'functional equivalent' of corporate employees" such that "communications between such agents and corporate counsel" fall under the privilege.  Wollman, 475 F. Supp. 3d at 68 (quotations omitted).  The First Circuit has never formally adopted this doctrine.  Id.  Even assuming it is available, it would not apply here.  On the record before the Court, Edelman's relationship with Pega began only in May 2022, Edelman was not involved in Pega's primary business of providing software-as-a-service solutions, Edelman did not work out of Pega's offices, Edelman did not work exclusively for Pega—indeed, Edelman did not work for Pega directly but only via its contract with Pega's outside counsel Choate Hall & Stewart LLP ("Choate")—and Edelman did not act as Pega's sole public representative.  See United States ex rel. Long v. Janssen Biotech, Inc., No. CV 16-12182-FDS, 2025 WL 1725794, at *2 (D. Mass. June 20, 2025) (providing factors by which courts determine the applicability of the functional-equivalent doctrine); Wollman, 475 F. Supp. 3d at 68 (finding functional-equivalent doctrine inapplicable where consultant hired for specific projects, worked out of own offices, and worked for other clients).

3

As to Log. No. 275, Appian's motion is ALLOWED. Any attorney-client privilege applicable to these communications was waived by the inclusion of third-party Edelman. In this instance, the <u>Kovel</u> doctrine does not apply because Edelman's presence was not necessary for the provision of effective legal advice; instead, the Edelman consultants included were simply giving their public-relations advice, separate from counsel's legal advice. This is not to say that the <u>Kovel</u> doctrine could not elsewhere apply to communications between Pega, counsel, and Edelman, only that under these circumstances it does not. On a similar note, Pega cannot avail itself of the work-product protection here, as these communications were made for the purpose of responding to a journalist, not preparing material for litigation.

As to Log. No. 294, Appian's motion is ALLOWED. These emails concern client outreach in the wake of the Virginia Litigation, rather than legal strategy in that litigation.

As to Log. No. 337, Appian's motion is ALLOWED. The attorney-client privilege does not encompass Log. No. 337 because no legal advice was expressly requested or given; rather, these communications focus on public-relations advice. Similarly, Log. No. 337 is not subject to work-product protection because there is no indication these communications were made for litigation, rather than about litigation.

As to Log. No. 422, Appian's motion is ALLOWED. Nothing about these emails suggest they were prepared in anticipation of or for use in litigation. They merely discuss how to talk to Pega's employees about the verdict in the Virginia Litigation.

As to Log. No. 775, Appian's motion is ALLOWED. There is no attorney-client privilege here because the advice given is not legal advice but instead advice as to how to accurately speak about the Virginia Litigation. And the work-product doctrine does not apply

because this discussion was aimed at developing a response to a journalist's inquiry, not a litigation strategy.

As to Log. No. 871, Appian's motion is ALLOWED. These communications do not discuss litigation strategy, whether for the Virginia Litigation or for potential shareholder litigation, so the work-product doctrine does not apply.

As to Log. No. 1047, Appian's motion is ALLOWED. While these communications may contain a request for legal advice, any attorney-client privilege available was waived by the inclusion of Edelman on the email chain. Here, again, Edelman was not acting as a necessary conduit for the request or provision of legal advice under Kovel. And there is no work-product protection here because these communications were not drafted for the purpose of litigation; their purpose was to plan meetings and discussions regarding litigation. The Court, however, takes no position on the protection afforded to the documents linked in or attached to these emails, which were not presented as part of Log. No. 1047.

As to Log. No. 1074, Appian's motion is ALLOWED. Neither the attorney-client privilege nor the work-product doctrine applies to these communications for the same reasons as given for Log. No. 1047.

As to Log. No. 1133, Appian's motion is ALLOWED. This document covers only how Pega should frame the Virginia Litigation to employees, customers, partners, and investors; it contains no mention of litigation strategy or how the recommended public-relations strategy may impact the Virginia Litigation. As such, the work-product doctrine does not protect it.

As to Log. No. 1835, Appian's motion is DENIED. This memorandum was drafted as part of Pega's litigation strategy, so it is protected by the work-product doctrine. Although it also has a public-relations purpose, the memorandum would not have been created but for the

Virginia Litigation and is permeated with a litigation purpose. Nor does disclosure to Edelman waive that protection since such disclosure did not raise the likelihood that opposing counsel would access the memorandum. The Court need not reach the attorney-client privilege.

As to Log. No. 1834, Appian's motion is ALLOWED. These communications merely arrange for work product to be created; they contain no substantive work product. Similarly, no legal advice is given and the client, Pega, is not even included in these communications, so attorney-client privilege does not attach.

As to Log. No. 2161, Appian's motion is DENIED. This document contains attorney opinions and impressions regarding Pega's legal strategy on appeal in the Virginia Litigation, so the work-product doctrine shields its production. The document's dual public-relations purpose does not rob it of work-product protection, since it would not have been created but for the Virginia Litigation and it is imbued with an inextricable legal purpose. And disclosure to Edelman does not waive that protection because the communication is confidential. The Court need not determine whether attorney-client privilege also attaches.

As to Log. No. 2162, Appian's motion is DENIED for the same reasons as to Log. No. 2161.

As to Log. No. 2419, Appian's motion is ALLOWED. There is no attorney-client privilege here given that no legal advice is given, and Edelman, in this instance, is not translating between lawyer and client. Likewise, no work-product protection obtains because its purpose is primarily public-relations driven, with no litigation or trial purpose apparent.

To summarize the ledger, the Court ALLOWS Appian's motion with respect to Log. Nos. 107, 275, 294, 337, 422, 775, 871, 1047, 1074, 1133, 1834, and 2419 and DENIES Appian's motion with respect to Log. Nos. 1835, 2161, and 2162. In light of these rulings, the parties shall

confer with an aim toward resolving or narrowing the dispute over the withheld Edelman documents. The parties shall file a status report by August 11, 2025 reporting their joint or separate positions on the status of Pega's claims of privilege and protection put in issue by the present motion.

                                                              SO ORDERED.

                                               /s/ Leo T. Sorokin
                                               United States District Judge